

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MORRIS LANDON JOHNSON II, §
 §
 Petitioner, §
 §
v. § No. 4:18-CV-087-A
 §
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
 §
 Respondent. §

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Morris Landon Johnson II, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

**I. Factual and Procedural History**

In May 2013, in Erath County, Texas, Case No. CR13895, a jury found petitioner guilty of forgery by passing a check and true to the enhancement allegations in the indictment and assessed his punishment at 10 years' confinement and a $2000 fine. (Clerk's R. 28, 33-34.[1]) Petitioner's conviction was

---

[1]Unless otherwise specified, the state court records cited relate to petitioner's forgery conviction in Case No. CR13895.

affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Docket Sheet 2.) Petitioner also filed a state habeas-corpus application raising one or more of the claims presented, which was denied by the Texas Court of Criminal Appeals. (SHR-01[2] 3-19.)

Following his forgery conviction, petitioner was convicted in August 2013 of possession of a controlled substance in Erath County, Case No. CR13896, and sentenced to 10 years' confinement. The sentence was ordered to run consecutively to his 10-year forgery sentence. (Case No. CR13896, Clerk's R. 49.) In September 2014 petitioner was convicted of delivery of a controlled substance in Hood County, Texas, Case No. CR12645, and sentenced to 40 years' confinement. The sentence was ordered to run concurrently with his 10-year sentences. (Case No. CR10676, Clerk's R. 93.)

The evidence at petitioner's trial reflects that Ryan Guthrie, the son of the complainant in the case Timothy Guthrie, gave petitioner a forged check from his father's checking account made payable to petitioner for $523.86 and that petitioner cashed the check at Texas Bank in Stephenville, Texas. (Reporter's R., vol. 4, 13-22, 34-39 & vol. 8, State's Ex. 1.) It was later discovered that the check had been forged. At the time of

---

[2]"SHR-01" refers to the state habeas record in petitioner's state habeas proceeding in WR-85,192-01.

petitioner's arrest, the police seized two allegedly forged checks from petitioner's wallet, including a $400 check written on Timothy Guthrie's account, and a small amount of methamphetamine. (Reporter's R., vol. 4, 59; SHR-01 46.) In a videotaped statement to police, petitioner stated that Ryan Guthrie gave him the $523.86 check to cash because Ryan owed him money, that he thought the check was from Ryan's account, and that Ryan swore the check was legitimate. However, petitioner admitted to being involved in a "check scheme" with several individuals, including Ryan, for a period of three or four months and to previously forging ("scribbling some stuff on the signature line") and attempting to pass a $21 check from Timothy Guthrie's checkbook.

## II. Issues

By way of this petition, petitioner challenges his forgery conviction on ineffective-assistance grounds (grounds one, two, three, and five) and the Texas Board of Pardons and Paroles's policy regarding consecutive ("stacked") and concurrent sentences (ground four). (Pet. 6-7; Supp. Pet. 6.)

## III. Rule 5 Statement

Respondent asserts that the petition is not subject to the successive-petition bar or barred by the statute of limitations and reserves the right to raise the defense of exhaustion and/or procedural default. (Resp't's Answer 4.) 28 U.S.C. §§ 2244(b),

(d) & 2254(b)(1).

## IV. Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings of fact and conclusions of law, a federal court may imply fact

4

findings consistent with the state court's disposition and presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law" in making its decision. *Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Richter*, 562 U.S. at 99; *Townsend v. Sain*, 372 U.S. 293, 314 (1963); *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002).

## B. Ineffective Assistance of Counsel

Under his first, second, third, and fifth grounds, petitioner claims that he received ineffective assistance of counsel at trial. (Pet. 6-7; Supp. Pet. 6.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable

5

professional assistance. *Id.* at 668, 688-89. Counsel has "wide latitude" in making tactical and strategic decisions, which are "virtually unchallengeable" and generally do not provide a basis for postconviction relief on grounds of ineffective assistance of counsel. *Id.* at 689. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state courts have adjudicated the ineffective-assistance claims on the merits, this court must review the petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 105.

Petitioner claims that his trial counsel was ineffective in the following respects:

(1) counsel suffered from a conflict of interest based on his simultaneous representation of Ryan Guthrie on an unrelated criminal matter;

6

(2) counsel failed to object to extraneous-offense evidence of the checks found in petitioner's wallet at the time of his arrest and other uncharged and unrelated criminal acts discussed in his video-recorded statement;

(3) counsel failed to call officer Kayla Jones to impeach the testimony of Timothy Guthrie that Ryan never forged any of his checks before; and

(4) counsel failed to object to the jury charge and request an instruction on the defense of mistake of fact.

(Pet. 6-7; Supp. Pet. 6.)

Petitioner raised his claims in his state habeas application and counsel responded via affidavit, in relevant part, as follows:

> I was appointed to represent [petitioner] on a forgery case, and a possession on meth case. . . .
>
> The two new cases involved stealing checks from his friend's father, and passing them. When he was arrested on the forgery charge, he had a small amount of methamphetamine in his possession.
>
> [Petitioner] refused the plea bargain offer, which was prison time with both cases running concurrently, and demanded that I obtain a lesser included misdemeanor for the felony charges. . . .
>
> . . .
>
> Eventually, the forgery case came on for trial. I called his brother and asked him to bring clothes for court, and his brother declined to help. I got him some new clothes for court. He asked me to contact some character witnesses, but they declined to participate. We had the trial, and he was convicted and sentenced.
>
> . . .
>
> Stephenville is a small town, and the dope community is relatively small. Ryan Guthrie and

7

[petitioner] shared meth and helped each other get high. Ryan stole the checks from his dad, and gave them to [petitioner] to pass. Ryan was not charged with the forgery, and I represented Ryan on another possession case. He pled guilty, and declined to testify about his involvement in [petitioner]'s case. There was no conflict of interest, and it was a benefit for me to know as much about the transaction as I could, from representing Ryan.

Ryan Guthrie was not charged with the forgery/possession cases that [petitioner] was charged with, and I did not represent Ryan Guthrie on any forgery or possession case. I did not see any conflict to waive. Ryan was writing to [petitioner], and [petitioner] gave me one of Ryan's letters, which was included in the file. Ryan Guthrie's father was the victim in [petitioner]'s case, and Ryan Guthrie was a potential witness, but he (Ryan Guthrie) exercised his right to remain silent in [petitioner]'s case, as late as the afternoon after jury selection, when I went to his house and talked to his (Ryan's) dad. Ryan hid out until after [petitioner]'s trial was over, then turned himself in and went to a drug rehab program.

At a criminal trial, the State can prove extraneous offenses to prove the intent of the defendant. The other checks were relevant, and admissible.

. . .

(SHR-01 45.)

Based on counsel's affidavit, the documentary record, and his own recollection of the trial proceedings, the state habeas judge entered express findings that there were no unresolved material facts requiring a hearing and that petitioner's application lacked any legal or factual merit and concluded that relief should be denied. (Id. at 57.) In turn, the Texas Court of Criminal Appeals denied the application in a written order

8

following remand on the parole issue. To the extent more particularized findings and conclusions of law were not made, this court will infer fact findings consistent with the state courts' disposition of petitioner's ineffective-assistance claims and, absent any evidence that incorrect standards were applied, assume that the state courts applied the *Strickland* standard when considering petitioner's claims.

Under his first ground, petitioner claims that counsel labored under a conflict of interest because counsel's concurrent representation of Ryan Guthrie prevented counsel from investigating or implicating Ryan "as having victimized petitioner in his forgery scheme." (Pet'r's Reply 5.) Under *Cuyler v. Sullivan,* 446 U.S. 335 (1980), to demonstrate unconstitutional simultaneous representation, a petitioner must show that an actual conflict of interest adversely affected counsel's performance. *Id.* at 348. *Cuyler* applies to those cases in which a defendant raises no objection to his counsel's representation at or before trial. *Id.* at 348. On the other hand, under *Holloway v. Arkansas,* 435 U.S. 475 (1978), if a defendant gives the trial court notice of the alleged conflict at or before trial and the trial court fails to inquire into the conflict, prejudice to the defendant is presumed upon a showing of possible prejudice. *Id.* at 484-91.

Petitioner asserts that he sent one or more letters to the

9

trial court complaining of counsel's simultaneous representation of Ryan Guthrie, and he presented a copy of one such letter in the state habeas proceedings. (SHR-01 37-38.) Thus, he asserts that the trial court received notice and was required to make an inquiry into the alleged conflict under *Holloway*. (Pet'r's Reply 1-5.) However, petitioner's letter creates, at most, a vague, unspecified possibility of conflict and was insufficient to trigger the trial court's duty to inquire. *See Mickens v. Taylor*, 535 U.S. 162, 168-69 (2002). Deferring to the state courts' implied finding that nothing in the circumstances of this case indicates that the trial court had a duty to inquire whether there was a conflict of interest, the state courts' rejection of the claim is not objectively unreasonable. Although counsel's representation of both parties was apparently concurrent at some point and counsel possibly learned confidential information in the course of representing Ryan Guthrie relevant to petitioner's case, there is no relationship between the two criminal cases or evidence that counsel otherwise divided his loyalties. In fact, counsel presented a defense compatible with the view that Ryan forged the check and that petitioner received the check from Ryan "in good faith," believing it was legitimate. (Pet'r's Reply 2.)

Under his second ground, petitioner claims that counsel was ineffective by failing to object to prejudicial extraneous-offense evidence of the allegedly forged checks found in his

10

wallet and other uncharged and unrelated criminal acts discussed in his videotaped statement regarding the "check scheme." (Pet. 6; Reporter's R., vol. 8, State's Exs. 4 & 5.) However, under Texas law, evidence of extraneous offenses is admissible to prove a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b)(2). Petitioner was charged with passing a forged check with the intent to defraud or harm another and his defensive theory was that he did not know the check was forged. (Clerk's R. 4.) Deferring to the state courts' implied finding that the evidence was relevant, apart from its character-conformity value, and admissible to show petitioner's intent to defraud or harm Timothy Guthrie, the state courts' rejection of the claim is not objectively unreasonable. Counsel is not ineffective for failing to make frivolous objections. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002).

Under his third ground, petitioner claims that counsel was ineffective by failing to call officer Kayla Jones to testify that Timothy Guthrie told her that his son "had some of his checks at one time" as stated in her police report to impeach Timothy Guthrie's testimony at trial that "his son never had any of his checks." (Pet'r's Reply 7.) According to petitioner, calling the officer would have not only impeached Timothy Guthrie's testimony but would have advanced the defensive theory

by showing Guthrie knew his son had some of his checks and was passing them without being charged." (Id. at 8.) Petitioner posits that counsel did not do so because he was conflicted—*i.e.*, by calling the officer he would potentially expose Ryan Guthrie's role in the forgery and violate his ethical obligations to Ryan at the expense of his duty to petitioner. (Id.) However, petitioner does not direct the court to the officer's report or an affidavit from the officer in the state court records. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Finally, under his fifth ground, petitioner claims that counsel was ineffective by failing to object to the jury charge and to request an instruction on the defense of mistake of fact because petitioner believed the check was legitimate and because it was his only viable defense. (Supp. Pet. 6.) Texas Penal Code § 8.02 provides that "[i]t is a defense to prosecution that [the defendant] through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE ANN. § 8.02(a) (West 2011). Counsel did not explain his reasons for not objecting to the charge and requesting a mistake-of-fact instruction in his affidavit. Thus, on this record is

12

would be difficult for petitioner to overcome the strong presumption that counsel's omission was strategic. Further, in the case of *Okonkwo v. State*, 398 S.W.3d 689 (Tex. Crim. App. 2013), the defendant was charged with forgery by passing or possession with intent to pass counterfeit money. He argued that his trial counsel was ineffective by failing to request an instruction on mistake of fact because he did not know the money was counterfeit. The Texas Court of Criminal Appeals addressed the issue as follows:

> The evidence introduced by appellant's trial counsel suggested defensive theories that inconsistently asserted either (1) that appellant lacked criminal intent because he honestly believed that the bills were genuine, even if he was unreasonable in that belief, or, alternatively, (2) that he was reasonably mistaken about the authenticity of the bills. The first alternative theory promoted by appellant's trial counsel was addressed by the jury instruction that expressly preconditioned a conviction upon a jury finding that appellant knew the currency was not authentic. In other words, the instructions on the forgery elements required the State to prove beyond a reasonable doubt that appellant actually knew the bills were forged. By comparison, had counsel pursued an instruction on mistake of fact to address his second alternative theory, the jury would have also had to decide whether that belief was reasonable. This would have been problematic for appellant because the instruction would have decreased the State's burden of proof by permitting the jury to convict him if it concluded that his mistake was unreasonable, even if it found that the belief was honest. Therefore, counsel was not objectively unreasonable in failing to request an instruction that may have caused the jury to convict him based on a lessened burden of proof.

*Id.* at 696 (citations and footnotes omitted).

It appears that petitioner would have been in the same

13

conundrum had counsel requested a mistake-of-fact instruction.

In summary, petitioner has not demonstrated deficient performance or shown any reasonable probability that the outcome of his trial would have been different but for counsel's alleged deficiencies. A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct is strategically motivated and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner has presented no evidentiary, factual, or legal basis in this federal habeas action that could allow the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. See 28 U.S.C. § 2254(d).

## C. Parole Review

Under his fourth ground, petitioner claims that the Texas Board of Pardons and Paroles (the Board) is violating his right to due process in applying its policy regarding consecutive ("stacked") and concurrent sentences. (Pet. 7.) Under the policy, "when an inmate has concurrent sentences, the Board does not consider him for release to parole until he becomes eligible under the sentence with the latest parole-eligibility date"—here, petitioner's 40-year sentence. (SHR-01 Op. 1.) Petitioner asserts

14

that in refusing to review him for parole on his first 10-year sentence until he is eligible for parole on his 40-year sentence denies him the possibility that his 10-year sentence would cease to operate and allow the second 10-year consecutive sentence to commence. (Pet. 7.) Petitioner raised this claim in his state habeas application, but, under Texas law, an inmate does not have a protected liberty interest in release on parole. *See Ex parte Retzlaff,* 135 S.W.3d 45, 49 (Tex. Crim. App. 2004). Thus, the Texas Court of Criminal Appeals determined that petitioner's claim regarding entitlement to parole review did not allege a constitutional violation and was not cognizable on state habeas review. *See Ex parte Johnson,* 541 S.W.3d 727, 830 (Tex. Crim. App. 2017).

Similarly, an inmate does not have a protected liberty interest in release on parole under clearly established federal law as determined by the United States Supreme Court. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex,* 442 U.S. 1, 7 (1979). Because Texas inmates have no protected liberty interest in parole, they cannot have a liberty interest in parole consideration or other aspects of parole procedures. *Johnson v. Rodriguez,* 110 F.3d 299, 308 (5th Cir.), *cert. denied,* 552 U.S. 995 (1997) (stating that "because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural

(or substantive) Due Process grounds").

For the reasons discussed,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED March 13, 2019.

JOHN McBRYDE
UNITED STATES DISTRICT JUDGE